20-1020. Ms. Zoglin. Good morning, your honors. May it please the court, my name is Sonia Zoglin. I represent the appellant Patrick Carlineo. The issue for this court is a narrow one and specifically whether the district court abuses discretion when it imposed a special condition of supervised release based on an unsolicited suggestion from a member of the community that Mr. Carlineo participate in a specific restorative justice program called Partners in Restorative Initiatives. This court should strike that condition for two primary interrelated reasons. First, the condition is impermissibly vague. Second, the condition constitutes an impermissible delegation of the court's authority, not only to probation, but to a third party previously unknown to the court or probation. As to the court noted in United States v. Reeves, if a condition however well intentioned is not sufficiently clear, it may not be imposed. This is just such a condition. Mr. Carlineo's objection is not to the concept of restorative justice generally, but to the imposition of this particular condition. In this case, the condition was based on a non-solicited letter submitted by a member of the community who was himself affiliated with an organization called Partners in Restorative Initiatives. By his own terms, the author was suggesting in the letter as an alternative to incarceration that Mr. Carlineo participate in some form of a range of potential restorative justice activities. The first step in the analysis of this court set out in Reeves is to determine what does this condition actually mean. The court noted the possibility of a listening circle conducted by religious or community organizations, a sentencing circle by which two parties voluntarily engage in a process through which they come up with an appropriate sentence, or community service. And then he mentioned several organizations that the community service could be. Before we get to that, I have the first letter that you wrote to the district judge objecting to the special condition, and you note First Amendment objections, including the infringement on Mr. Carlineo's right to freedom of speech and association, as well as the free exercise of religion and the prohibition against the establishment of religion. I've been looking at the letter from the organization. It does seem that he might be required to go to a Catholic Islam. He might be required to work with Catholic charities to resettle refugees and so on. It seems like maybe there are such objections, but you don't seem to be pressing it on appeal. I mean, do you think that there are First Amendment problems with requiring this kind of a program? Well, I certainly think there could be, but that goes, I think, to my main point, which is that this is so vague that I don't know what would be required. I don't know what Mr. Carlineo would be required to do, and perhaps most significantly, we don't know who would get to decide what he would be required to do or when he would finish with that requirement. But I certainly agree that if, whether the person who runs the program or probation were to decide that that were one of the activities that he were required to do, yes, I do think that could raise those issues. What's in front of us is your vagueness challenge and the impermissible delegation challenge currently. Yes. Yes, your Honorable. And you understand, so right. So is there anything in the record, okay. Is there anything in the record besides this letter from the organization that tells us what it would be This was the entire explanation of what the program required. This letter dated February 7th to Judge Garacci. Is that right? Yes. That was the only input that I had. And so you're right. So it says the following are restorative justice sentencing options, and then he suggests that the district court might adopt one of those options, but then the district court requires something called the Partners of Restorative Initiatives, just restorative justice program. But I don't see anything in the letter that identifies a program. And what's your understanding of what the Partners of Restorative Initiatives Restorative Justice Program is? Is it all of these options or some subset of them? Of course, that raises the issue. Who knows? But my understanding is that the Partners in Restorative Justice Initiatives is the name of an organization that provides these services. And that the person who wrote the letter was, I believe, a founder of the organization. And he basically, after hearing about it in the media, wrote a letter to the court saying, look, this is who we are, and we could offer some of these activities. He never intended it to be some sort of program. And so then the district court in a special... I just have one question. The district court in the special conditions specifically called that participation in a sentencing circle. But then when I read the letter to see what a sentencing circle is, it looks like everybody gets together to arrive at a consensus of what the sentence should be. But the district court already imposed the sentence. So is your understanding that he's required to go into a sentencing circle to determine some further sentence? Is that what would happen with a sentencing circle? Certainly an excellent question. And it comes back to the fundamental issue, which is that we don't know what would be required. But yes, I do think that the definition of a sentencing circle is inconsistent with the posture of this case, which is that he has pled guilty, he has been sentenced, he has served a term of incarceration, and now he is being required to participate in some form of activities in this program. Judge Parker? What would be your... Look, your client wrote to a member of... communicated to a member of Congress, a member of our Congress, that, quote, somebody ought to put a bullet in her skull. Back in the day, our forefathers would have put a bullet in her fucking skull. Now, the trial judge, and maybe his approach didn't work, was trying to help your client, right? Well, I assume he would see it that way. I mean, I would... Do you see it differently? Well, in that context, I think it would have certainly been helpful, and we would have welcomed a sentence of... It wouldn't actually be a sentence, because my understanding of restorative justice is that it is, by nature, should be a voluntary activity, and it should be something that not only you choose to participate in, it might be an alternative to incarceration. That's certainly what the author of the letter intended it to be. This, however, was imposed as a mandatory condition following a term of incarceration. To that extent, I think it might... Counsel, we frequently see conditions of relief, release that require defendants... of supervisor release that require defendants to participate in anger management programs or substance abuse programs. What's your objection to having this condition sent back to the district judge to have it just simply more appropriately focused along the lines you are objecting to? Well, as to those programs, I think that there's a very clear distinction between what the sentencing guidelines specifically set out as potential sentencing conditions. Conditions of supervision being mental health treatment or chemical dependency or sex offender treatment. Those are all very specific, and the guidelines actually say that these programs must be approved by the United States Probation Office. So, a drug program needs to be certified through New York State, through the Office of Addiction Services and Support. Okay, so your objection then is that since this program is not approved by the probation office, it was error to impose it. That is certainly one of them, that it is a completely unformed program that probation was not previously aware of. And they have, in our district, unfortunately, they have no relationship with any restorative justice programs as they do in at least a couple of districts in the country. But there is not that. Ms. Zaglin, this is Judge Lillier. Let's say that we agree with you, at least with respect to your vagueness argument. And I take it from what you said that you, your client, don't object, at least in this case, to the idea of restorative justice. But let's say that we agree with you on the vagueness issue. What should we do? That is, what are our decretal options? Do we need to vacate Judge Juarez's imposition of this special condition? Or can we remand for him to maybe elaborate a little bit more, or even much more, on what the contours of this program are? Or let it go altogether. Or, yeah, do something else. So what are the options? Right. I would submit, certainly, Your Honor, we wouldn't, you know, object to some form of alternative relief. But I think, under these circumstances, it would be difficult to craft an appropriate special condition for two primary reasons. One is that, as I've said, it would be a voluntary, and as I understand it, alternative to incarceration. And that it would be, as a mandatory addition to incarceration, it would, in this case, be counterproductive to the goals of rehabilitation and deterrence, for example. But also because there is no existing relationship or program in this district, or as far as I'm aware, any sort of set of standards or parameters by which these programs are licensed or credentialed. So just to follow up on that, so my question is, if Judge Juarez got this back, either as a result of a remand, we can talk a little bit more about that, or as a result of a vacature of the sentence, in which case your client might be exposed to something else altogether. But is there anything that would prevent him from, with the help of the organization, with the help of probation, with the help of any of the possible stakeholders, elaborating on what the condition really is and providing many more details about the program, about Mr. Carlino's participation in the program? Is there anything objectionable about that, legally objectionable about that? I mean, I know that he may not want that, but... Right, right. I think in some ways it sort of puts the cart before the horse in that what I believe would be required would be for probation to investigate the availability of such programs in our area, or the parameters that these programs are licensing or credentialing. My question wasn't meant to foreclose any of that, so he could, before issuing whatever order, by way of clarification, he could ask probation, which is, as you know, a wing of the court, to look into all that and inform the government, inform Mr. Carlino and you, as well as inform himself about the parameters of the program and what Mr. Carlino would need to do. So, let's accept all of those things. Is there something legally objectionable to that? I do think that would address some of our concerns. I would note, however, that I don't think it addresses the concern that these programs are designed to be alternatives to incarceration, and they are designed to be voluntary. Well, here, the judge gave you a sentence that's well below the guideline, and he appended a provision on it that he believes would, in lieu of spending more time in jail, would help your client. I find it somewhat ironic that the Federal Defender is, at least in this case, foursquare against creative alternatives to incarceration. Don't we want judges to, if not think out of the box, at least think at the outer edges of what will help people who are in the criminal justice, court of the criminal justice system? Absolutely. I agree with that, Your Honor, and I would wholly support a program such as they have in the District of Massachusetts, where individuals post-plea and pre-sentence engage in a very structured program that involves restorative justice, and then can present that to the court as perhaps a reason the court may want to impose a non-incarcerated sentence. In this case, the guidelines agreed upon by the parties in the plea agreement were, the low end was 12 months, and Mr. Carlenio received a sentence of one year and a day. The guidelines agreed upon by the court were, determined by the court, were a minimum of 18 months. So I would, I guess, disagree somewhat in the notion that this was a well-below Based on your comment a moment ago, that depending on how it's implemented, you thought it might violate your client's First Amendment rights. It seems like you also think, depending on the way it's implemented, it might not be helpful to your client, but might be coercive. Well, I think it... Is that right? So it doesn't matter. It's not necessarily helpful. It just depends on how it is structured. Yes, I would agree with that, and I think one of the primary factors relating to that would be that it would be something that a person voluntarily engaged in, and then could present as a potential alternative to incarceration. Let me just clarify again. You are not, on this appeal, making a First Amendment claim or challenge. It's a vagueness challenge, and an impermissible delegation challenge. Is that correct? Yes. Yes, and I don't... Right. But you did say to me that the reason you're not doing that is because you don't know exactly what it requires, and if it required some things that are mentioned in this letter, there might be a First Amendment problem. You just, at this stage, don't know because it's too vague to determine what's being required, right? Yes, that's accurate, Your Honor, and in my letter to the court initially, I did... I believe what I said was putting aside for a moment the potential First Amendment challenges, and that is because, at this point, it's too vague to know whether there would be First Amendment challenges. Right, so if, in fact, it went back and, you know, it turned out that you would have to go to a religious facility and engage in worship services or something, you would have a First Amendment challenge at that point. We just don't know that that's what would be required because it's one of the things that is mentioned as a potential component of the sentence in a letter of options, and so you just don't know if that would be required. Absolutely, that's correct. So it's not right in front of us. Okay, we'll hear from the government. Ms. Lee? Thank you, Your Honors. May it please the court, my name is Tiffany Lee, and I represent the United States. As counsel for Mr. Carlenio has kind of boiled down, this appeal only relates to the one special condition of supervised release, and as this court has consistently held, the district court has wide discretion when it comes to crafting special conditions of supervised release. Here, the two challenges which Mr. Carlenio asserts are actually, there are actually three challenges. One is whether or not there's a sufficient relationship to the offense with respect to the goals of the special condition of supervised release, and as the government has asserted, the district court was particularly concerned with the fact that Congresswoman Omar was, in essence, targeted because of her religion, and while it may not have, you know, the threat, according to Mr. Carlenio himself, were supposed to be more political as opposed to religious, the use of the words radical Muslim, Muslim felt it necessary to impose a condition of supervised release that would require Mr. Carlenio to participate in the listening circle to speak with different Muslims and to be educated in terms of Muslim traditions and customs. The second part of Mr. Carlenio's argument has to do with improper delegation of authority, and this court has consistently said that... Are there other conditions of supervised release that have been imposed or that have been upheld that are tantamount to doing that, like requiring somebody to go study Muslim traditions, as you just said? I mean, is that a thing that the government should be requiring of... It wasn't requiring studying. It was requiring listening to people from other cultures and As to Judge Menashe, your concern about vagueness, I mean, this court has upheld conditions imposing just the requirement that someone participate either in a sense-offense-specific treatment program or a drug treatment program. Hold on, hold on, hold on. Would you just tell us what a listening circle entails in connection with this program? Just describe it to us. Well, according to Mr. Botcherter's letter, it would potentially consist of, you know, basically where listening with potential... If Representative Omar was able or not able to participate, just listen to stories from Muslim refugees or people who have suffered from violence for being Muslim, you know, and that, you know, that was a proposal with respect to the condition. How long? For how long? It doesn't say, but, Your Honor, the condition... What are the other parameters? Your Honor, the reality is the condition just says you participate in your partner's restorative justice initiatives, restorative justice program. It just requires participation. It doesn't say anything about successful participation. Okay, but even on that initial... Hold on one second. Do you think... No, no, no, no, no, no. Do you think that it matters that there might be a difference between participating in a listening circle once as opposed to every week for the remainder of the term of supervised release? Your Honor, the reality is that's a detail. Like, for example, let's say Judge Geraci imposed the condition that you participate in a restorative justice program, period, and probation will administer the details of that program, period. The probation could pick whatever programs that it has a relationship to, and, you know, the court has never said that that's an improper either delegation of authority or that that type of condition is too vague. Usually the programs are well-established. Had you ever heard of this program before? Your Honor, well, I was not the trial attorney on the case. No, no, no, but had you ever heard of it if you were up there? Had you ever heard of this program before? I have not, but that's... Your Honor, the question becomes, though, like when the district court orders, let's say, participation in a sex offense treatment program and says probation will administer the details of the program, if probation were to partner up with a new sex offense treatment provider, it's not as if everyone knows what's going on, and the court has never said that, oh, no, that's vague. So I think your point that sometimes the court might say you have to participate in a program, but I don't even know what the Partners in Restorative Justice Initiatives program is. So if all we have in the record is this letter, the letter says I'm the founder of Partners in Restorative Initiatives. Here are some sentencing options, any one of which could be the sentence. It never says I have a program that should be imposed. And so the idea that there is something called the Partners in Restorative Justice... That's just entirely a creation of the district court. Like there is no document anywhere that says this is the Partners in Restorative Justice program. Is there? Like when you talk about a sex offender treatment program, I could look into what that program requires, but there's nothing here in the record that even explains what this program is. But, Your Honor, what I'm trying to say is the question is whether or not the district court abuses its discretion when it mandates participation in the program. All this stuff is... Okay, but if you just take my premise, you're not saying that there isn't. So if there is no such thing as the program, there's just an organization called Partners in Restorative Initiatives that does some things here and there, but they have not established something called the Restorative Justice program. And the district court says you must participate in something called the Restorative Justice program. Would that not be abuse of discretion? Because the thing doesn't exist and nobody knows what it entails. No, because I think Mr. Bottrecker is saying that... So who would decide? So you said in response to Judge Loya, you don't know how many enlisting circles will be required. Who's going to decide how many enlisting circles are required? Well, to the extent that it's not as if there isn't an opportunity for a modification of the supervised release in any event. Let's say he starts participating, and we see this also for all these other programs where they're saying, you know what? This is too onerous. Can we modify the condition where I don't sit in the sentencing circle? Or I've gone in, I've spoken with the program and the program has said... So you're saying we'll find out what it is when he starts doing it, and then he should ask for a modification. But if we don't even know what it is at the beginning, I mean, sometimes we do modify conditions for being unduly onerous. And if we can't even tell, isn't that a problem? But that's... I guess the question is whether or not you're treating any restorative justice program as being similar to a sex offense program. Can I ask you the question that I asked about? I want to just clarify this thing about the sentencing circle. So one of the things that the special conditions specifically called out is the sentencing circle and the enlisting circle. I read the letter. It says the sentencing circle's purpose is for everybody who participates to arrive at a consensus of what the sentence should be. So is he being required to participate in a sentencing circle that will determine some further sentence that he'll have to serve? I agree that there's a disconnect with respect to what a sentencing circle potentially represents through the Partners in Restorative Justice Initiative program versus... Right. So it is possible to read the special conditions here to suggest that he's going to go to this organization and participate in a sentencing circle that's going to develop some additional sentence that he'll have to serve. Isn't that at least something that calls for clarification? I agree that, you know, to the extent that that aspect of it requires either... Well, I don't know. I can't even say that it requires clarification because this is something, again... Judge Parker. Oh, sorry. Go ahead, Judge Parker. No, I have no... I'm good. I have no further questions. So if we... I've got a question. If we disagree with you and determine that maybe for some of the reasons we just mentioned relating to the sentencing circle, but maybe for other reasons, this is vague, what do you suggest we do? Well, I guess that's... My concern is saying, like, under these circumstances, why are we saying this vague when other... Don't fight the hypothetical. If we disagree with you and determine that this is vague, what do we do? Then you remand to ask for clarification. Right? That would... I mean, that's a remand. We don't need to vacate the sentence. We just can remand. You can remand. Correct. I think you can remand to ask for clarification on it. And if the... Because... If Judge Tresi, in providing clarification, says just, again, hypothetically, he's going to have to participate in this listening circle, which I still don't... I don't know what that is. I just don't know what it is. Or the sentencing circle, or both, for an hour or two hours each week, is that something that is effectively a new condition? Or is that just a clarification, sort of a theoretical change? That would be, I think, a clarification, right, on the details of how the program is to be administered. Because in some other contexts, as you know, Ms. Lee, we have vacated because there's a sufficient difference between the oral pronouncement of sentencing and the subsequent clarification, or the possible modification. And you're saying that pretty much anything, by way of clarification from Judge Tresi, would not be that significant a difference. That's what I'm concerned about, right? Well, you know, I mean, it seems that the prong that people are concerned about is really the entity that's being charged with administering the program. And I guess that's why I have a disconnect with any vagueness challenge, because of the fact that, like I said, you know, we have always upheld conditions of supervised release in which we've said, you know, probation can choose. And then the details of which are left to probation. And there have been challenges in the past, recently over the last two years, where the well, no, I don't know what the details are. I don't know what my person is going to be required to do in drug offense treatment, sex offense treatment, et cetera, et cetera. Therefore, these conditions are vague. Here, we have something completely different. We have an exact provider and two, I guess, mechanisms in terms of, or two events, activities, in which specifically this guy is supposed to participate in. And that's it. You know, so it's hard for me to try and articulate. Like, I don't understand how, when a district court says, just go to treatment and probation gets to choose, and you won't know what the full panoply of stuff is going to go on during treatment, that's okay. Whereas in this case, you have something so specific, and that's not okay. Let me just ask you one final question. I think then we'll turn back to your adversary from the Federal Defender's Office. Is there any evidence that probation was familiar with this program? No, I don't believe so. Like, you know, Ms. Ogling is correct. Mr. Botriger, I think in response to Congresswoman, the publication of the fact that Congresswoman Omar expressed her view with respect to the appropriate sentence, and Mr. He offered. He offered, yes. Correct. The program provider offered, or the program founder, to be more accurate. Ms. Ogling. Thank you, Ms. Lee. Thank you, Your Honors. Two quick points. One, to Ms. Lee's suggestion that because this was a specific provider, that makes the condition really above and beyond specific. Certainly, there's a name of a provider, and if one went to the letterhead, one could find an address. The issue is, what does Mr. Carlino do when he gets there? And I think it would go well beyond and supervise the details of the program. For example, the program offers possible community service. I'm not aware of this Court ever approving of a condition that just said, do some community service, as opposed to a specific number of hours. As to the comparison to the other programs, like sex offender programs or drug and alcohol programs, the provision is required. In fact, they are specifically trained how to determine whether a program meets certain criteria, is licensed by an association, like the Association for the Treatment of Sex Abusers, or the Office of Addiction Services and Support, or the New York State Education Department, which issues professional licenses for mental health treatment providers. None of those guardrails exist in this type of program, which is, as far as I know, completely unknown to the Department of Probation, and has no governing authority that would establish those kinds of things. Again, I want to make sure that I understand. The U.S. Attorney's Office is saying, well, if we agree with your argument, at least on the vagueness grounds, then you should be manned for clarification. Is that something that is workable from your perspective? It would not be my first choice, Your Honor, based on the issue of this being a mandatory addition to incarceration, which is not how I view restorative justice to be most effective, but certainly that we wouldn't object to an alternative release if that's the court's thought. So your argument against the remit... You want vacature, is that correct? Yes, Your Honor. Okay. But you think vacature is appropriate, why? Because of the nature of the program or because you think it's just inherent in the nature of restorative justice that it replaces a sentence as opposed to being supplementary and so there's no way to fix it? Is that what you're saying you should decide? I am saying in the context of this case that even as the author of the letter indicated that he felt that it would be counterproductive if it were imposed as a mandatory addition to incarceration. And the other reason would be that I don't think that the parameters, the licensing, the credentialing structure exists, at least in this district, for that type of program. But that could be a requirement on remand to do a licensed program, I suppose. Yes. Yes, Your Honor. Certainly that probation could look into whether such a thing exists. At this point, frankly, we just don't know. That could be part of the clarification or re-evaluation. It certainly could be. Yes, Your Honor. Okay. All right. That's fair. Thank you very much. Thank you. We'll reserve decision.